PIKE v CITY OF WYOMING

Docket No. 78746. Argued October 7, 1987 (Calendar No. 2). Decided November 10, 1988.

Ronald C. Pike, Sr., was awarded workers' compensation benefits for the loss of the industrial use of his legs. The amount of benefits was increased because of a determination made on the basis of the conclusive presumption of § 353(1)(a)(i) of the workers' compensation act that his wife was his dependent at the time of the injury. Thereafter, a similar conclusive presumption of dependency in a parallel provision of the workers' compensation act was declared to be unconstitutional gender-based discrimination. Subsequently, the City of Wyoming, his employer, and the Second Injury Fund requested that benefits be reduced on the ground that the claimant's wife was not a dependent in fact. A hearing referee dismissed the petition, and the Workers' Compensation Appeal Board affirmed on the basis of res judicata. The Court of Appeals, HOLBROOK, JR., P.J., and BURNS and MACKENZIE, JJ., denied leave to appeal (Docket No. 90953). The Second Injury Fund appeals.

In opinions by Justice GRIFFIN, joined by Chief Justice RILEY and Justice LEVIN, and by Justice BRICKLEY, the Supreme Court *held:*

The doctrine of res judicata does not preclude a redetermination of the dependency of the plaintiff's wife, where the prior finding of dependency was made pursuant to the gender-based conclusive presumption of § 353(1)(a)(i) of the workers' compensation act, which violates the Equal Protection Clause of the Fourteenth Amendment. The decision of the Workers' Compensation Appeal Board is reversed and the case remanded for further proceedings to determine whether the plaintiff's wife was in fact a dependent.

Justice GRIFFIN, joined by Chief Justice RILEY and Justice LEVIN, stated that the gender-based conclusive presumption of § 353(1)(a)(i) of the workers' compensation act is violative of the Equal Protection Clause of the Fourteenth Amendment. The

REFERENCES
Am Jur 2d, Workmen's Compensation §§ 10, 17, 584, 609.
See the Index to Annotations under Worker's Compensation.

doctrine of res judicata does not preclude a redetermination of the dependency of the plaintiff's wife.

1. The doctrine of res judicata, that a final judgment is conclusive as to the rights of the parties with respect to the claim adjudged, while applicable in workers' compensation proceedings, is not always a bar to modifications of workers' compensation awards or subsequent awards where there has been a subsequent change of law. A change in the law may render a prior determination obsolete or erroneous for future purposes. The principles of res judicata do not apply as to a claimant's future condition and do not preclude subsequent awards or subsequent modifications of the original award upon a showing that the claimant's physical condition has changed or that the claimant's status has varied. Neither do they apply to a change in the amount of benefits a claimant eventually may receive. In this case, the plaintiff's eligibility for benefits is not being challenged. Rather, only the amount of his benefits is at issue. Thus, res judicata is inapplicable because relitigation of benefits under § 353 merely would permit a subsequent modification of the amount of the original award.

2. In this case, if the plaintiff's wife is determined on remand not to be his dependent, the invalidity of the statutory presumption should not be applied to require repayment of benefits already received prior to the date of this decision. The purpose of invalidating § 353(1)(a)(i) is to accord equal protection to both spouses. The purpose would not be advanced by requiring the plaintiff to repay dependency benefits already received.

Justice Brickley, concurring, stated that because of the nature and design of the workers' compensation system, the doctrine of res judicata should apply in workers' compensation cases to all payments and benefits awarded or denied pursuant to an earlier determination, but only until such time as a subsequent petition based on changed circumstances that would not have been present at the previous litigation is filed and the issues presented are resolved. Prior to such a second determination, the prior determination controls, and the award or denial of benefits pursuant to the prior determination is not subject to the subsequent determination. The gender-based presumption at issue is unconstitutional; thus, the doctrine of res judicata does not bar a redetermination of the issue of the dependency of the plaintiff's wife.

The case should be remanded for a determination of whether the plaintiff's wife was in fact a dependent at the time of the

plaintiff's injury. If it is determined that she was not, the dependency benefits should be reduced as of the date of the determination.

Reversed and remanded.

Justice BOYLE, joined by Justice CAVANAGH, dissenting, stated that the dismissal of the defendant's petition for benefit reduction as barred by the doctrine of res judicata was proper. The doctrine applies both to issues of fact and law actually litigated and to issues that might have been litigated. A collateral attack on the same claim and the same facts solely on the basis of a judicial decision rendered after a final nonappealed award thus is barred. Historically, the application of res judicata has been determined by reference to an overriding institutional policy of fairness and finality. If that policy is to be abandoned, some justification must be identified apart from the current judicial view of the substance of law upon which the claim or defense is based. Otherwise, there is no law of res judicata.

Justice ARCHER joined in Justice BOYLE's dissent through Part I(A) to the extent that the doctrine of res judicata should be held to bar the defendant's petition for benefit reduction.

WORKERS' COMPENSATION — REDETERMINATION OF DEPENDENCY — RES JUDICATA.

The gender-based conclusive presumption of the workers' compensation act is violative of the Equal Protection Clause of the Fourteenth Amendment; the doctrine of res judicata did not preclude a redetermination of dependency of the wife of an injured worker (US Const, Am XIV; MCL 418.353[1][a][i]; MSA 17.237[353][1][a][i]).

*Williams, Klukowski, Drew & Fotieo, P.C.* (by *Michael P. Szczytko*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Sterling W. Schrock* and *Richard F. Zapala,* Assistant Attorneys General, for defendant Second Injury Fund.

GRIFFIN, J. In this workers' compensation case the plaintiff's benefit award was increased due to a determination that his wife was a dependent at the time of his injury. The determination was not

based on fact finding, but on § 353(1)(a)(i)[1] of the Workers' Disability Compensation Act,[2] which provides that the wife of an injured employee who lives with him "shall be conclusively presumed to be dependent . . . ." Subsequently, in *Day v WA Foote Memorial Hosp,* 412 Mich 698; 316 NW2d 712 (1982), this Court struck down as unconstitutional a similar gender-based presumption of a widow's dependency set forth in § 331(a).[3]

We hold that the gender-based presumption in § 353(1)(a)(i) is also unconstitutional, and that res judicata does not preclude a redetermination of the wife's dependency. Further, in the interest of fairness, we conclude that our holding will not affect dependency payments already made.

## I

Plaintiff filed a petition under the WDCA seeking total and permanent disability benefits for the loss of the industrial use of his legs as the result of an injury which occurred January 12, 1979. Plaintiff claimed his wife as a dependent, and in a decision mailed May 21, 1981, a hearing referee found plaintiff to be permanently disabled and his wife to be a dependent at the time of the injury.[4] It was not determined whether plaintiff's wife was dependent in fact because she was conclusively presumed to be a dependent under § 353(1)(a)(i)[5] of the act. There was no appeal.

---

[1] MCL 418.353(1)(a)(i); MSA 17.237(353)(1)(a)(i).

[2] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

[3] Currently MCL 418.331(a); MSA 17.237(331)(a).

[4] One section of the act provides in part:

Questions as to who constitutes dependents and the extent of their dependency shall be determined as of the date of the injury to the employee . . . . [MCL 418.341; MSA 17.237(341).]

[5] MCL 418.353(1)(a)(i); MSA 17.237(353)(1)(a)(i) provides:

Subsequently, on March 2, 1982, a parallel provision[6] of the same act, setting forth a conclusive presumption of dependency in the case of the widow of a deceased employee,[7] was declared by this Court to be "an unconstitutional gender-based discrimination because there [was] no similar presumption for widowers." *Day, supra* at 701. The ruling in *Day,* based on the Equal Protection Clause of the Fourteenth Amendment, followed *Wengler v Druggists Mutual Ins Co,* 446 US 142; 100 S Ct 1540; 64 L Ed 2d 107 (1980), which on the same ground had invalidated a similar provision of the Missouri workers' compensation statute.

Thereafter, on July 11, 1983, defendants city and the Second Injury Fund (SIF) filed a petition, alleging that plaintiff's wife was not a dependent in fact and requesting that plaintiff's benefits be reduced[8] as of the date on which *Day* was issued.

---

(1) For the purposes of sections 351 to 361, dependency shall be determined as follows:

(a) The following shall be conclusively presumed to be dependent for support upon an injured employee:

(i) The wife of an injured employee living with such employee as such wife at the time of the injury.

[6] MCL 418.331; MSA 17.237(331) provides in pertinent part:

The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

(a) A wife upon a husband with whom she lives at the time of his death . . . .

[7] When this conclusive presumption was first enacted, it applied equally to both spouses, irrespective of the fact of dependency. *Day, supra* at 705. See also *Finn v Detroit, M C & M C R Co,* 190 Mich 112, 119; 155 NW 721 (1916), and *Flynn v Western Board & Paper Co,* 318 Mich 28, 32; 27 NW2d 332 (1947). By the time the Legislature amended the workers' compensation statute to add the conclusive presumption of dependency in the case of an injured employee's wife, see 1949 PA 238, § 9, the Legislature had changed the conclusive presumption of dependency for the spouse of a deceased employee to apply only to widows. See 1948 CL 412.6; *Day, supra* at 705.

[8] At oral argument the SIF estimated that plaintiff's total benefit

Plaintiff interposed the defense of res judicata. Dismissal of the petition by the hearing referee was affirmed by the Workers' Compensation Appeal Board on the basis of res judicata. After the Court of Appeals denied leave to appeal, the SIF sought review in this Court. We granted leave to appeal. 428 Mich 857 (1987).

II

As already noted, this Court's decision in *Day*, that the conclusive presumption of a widow's dependency was unconstitutional, dealt with a different section of the act. However, at the time *Day* was decided, the United States Supreme Court had already struck down in seven different cases, on equal protection grounds, statutes containing similar gender-based distinctions. See *Wengler, supra; Califano v Goldfarb*, 430 US 199; 97 S Ct 1021; 51 L Ed 2d 270 (1977); *Craig v Boren*, 429 US 190; 97 S Ct 451; 50 L Ed 2d 397 (1976); *Stanton v Stanton*, 421 US 7; 95 S Ct 1373; 43 L Ed 2d 688 (1975); *Weinberger v Wiesenfeld*, 420 US 636; 95 S Ct 1225; 43 L Ed 2d 514 (1975); *Frontiero v Richardson*, 411 US 677; 93 S Ct 1764; 36 L Ed 2d 583 (1973); *Reed v Reed*, 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971). We conclude that the Supremacy Clause compels a conclusion in this case that § 353(1)(a)(i) is likewise unconstitutional because it provides an injured male worker with an increase in benefits if he has a wife living with him at the time of his injury, while no similar provision is made for an injured female worker whose husband lives with her.

As the Court of Appeals observed in *Costa v*

then amounted to approximately $211 a week, of which approximately $5 a week represented the incremental difference attributable to the dependency of plaintiff's wife. This estimate was not disputed.

*Chrysler Corp,* 152 Mich App 530, 535; 394 NW2d 6 (1986), "[t]he wording of § 331(1)(a) which applies to the wife of a 'deceased employee,' is virtually identical to the wording of § 353(1)(a)(i) which applies to the wife of an 'injured employee.' " See also *Williams v Chrysler Corp,* 159 Mich App 8, 13; 406 NW2d 222 (1987).

Thus, on the authority of *Wengler* and *Day,* we hold that the gender-based conclusive presumption of a wife's dependency set forth in § 353(1)(a)(i) violates the Equal Protection Clause of the Fourteenth Amendment.

In light of that holding, we turn now to consider whether res judicata bars redetermination of the unappealed finding that plaintiff's wife was a dependent at the time of plaintiff's injury.

III

That res judicata principles are applicable in the workers' compensation context has been recognized by this Court. *Hlady v Wolverine Bolt Co,* 393 Mich 368, 375; 224 NW2d 856 (1975); *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976); *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 161; 294 NW2d 165 (1980). However, workers' compensation determinations, which generally involve claims for continuing benefits, are different by their very nature from judgments rendered in tort and most other civil actions. From time to time, this Court has quoted with approval the rule set forth in 58 Am Jur, Workmen's Compensation, § 508:

> "The general rule with respect to the effect upon the application of the principles of res judicata to decisions under workmen's compensation acts, of a provision authorizing the modification of an award

upon a showing of a change in the employee's condition, is that a compensation award is an adjudication as to the condition of the injured workman at the time it is entered, and conclusive of all matters adjudicable at that time, but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award upon a showing that the employee's physical condition has changed." [See *Hlady, supra* at 375-376; *White v Michigan Consolidated Gas Co,* 352 Mich 201, 211; 89 NW2d 439 (1958).]

Disagreement within our Court surfaced in *Hlady* concerning the applicability of res judicata where there has been a subsequent change in the law, rather than a change in the facts. Justice LEVIN's explanation included the following:

The basis of our disagreement is that, in my opinion, a change of law, like a change of fact, eliminates the bar of res judicata where the claimant seeks continuing benefits under a statute providing "income maintenance."

The law can be changed by legislative enactment or court decision. When the Legislature amends a statute, its applicability to a case previously adjudicated is not analyzed in terms of res judicata. The issue then is one of statutory construction: did the Legislature intend the amendment to have retroactive as well as prospective application? Where the change is effected by court decision the analysis should be the same, whether as a matter of policy the new rule of law should apply retroactively as well as prospectively. [*Hlady, supra* at 387 (LEVIN, J., concurring).]

A

In a non-workers' compensation context this

Court has held res judicata not to be a bar where a subsequent change in the law altered the legal principles upon which the case was to be resolved. The plaintiff in *Socialist Workers Party v Secretary of State,* 412 Mich 571; 371 NW2d 1 (1982), a political party, had argued in a 1976 federal district court action that a Michigan statute unconstitutionally restricted the party's access to the ballot. The federal district court held the statute to be constitutional, and its ruling was summarily affirmed by the United States Supreme Court. *Allen v Austin,* 430 US 924; 97 S Ct 1541; 51 L Ed 2d 769 (1977).

Later, however, in 1980, the same political party filed suit against the same defendant in state circuit court, again challenging the statute on constitutional grounds. The circuit court granted the defendant accelerated judgment on the ground of res judicata; however, this Court granted leave to appeal, and we reversed. Focusing upon the fact that there had been an intervening change by the United States Supreme Court in the legal standard to be applied in determining the constitutionality of legislative restrictions on ballot access, *Illinois State Bd of Elections v Socialist Workers Party,* 440 US 173, 183; 99 S Ct 983; 59 L Ed 2d 230 (1979), this Court held that under such circum-stances res judicata did not bar the subsequent action. *Socialist Workers, supra* at 586. See also *Young v Detroit City Clerk,* 389 Mich 333; 207 NW2d 126 (1973).

The construction given to provisions of the Internal Revenue Code is sometimes changed by judicial decision. The United States Supreme Court emphasized in *Internal Revenue Comm'r v Sunnen,* 333 US 591, 599; 68 S Ct 715; 92 L Ed 898 (1948), that res judicata must yield at times to a change in the tax law, at least for *future* purposes:

A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change, or development in the controlling legal principles may make that determination obsolete or erroneous, at least *for future purposes*. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. [Emphasis supplied.]

While the analogy is by no means perfect, in some respects the relationship between a taxpayer and the federal government is similar to that of a disabled worker and the provider of workers' compensation. Both involve the payment of money over a period of years, and, moreover, in each case the obligation for, and the level of, payments may be affected from time to time by changes in the underlying law or facts. Thus, as in the tax-law setting, a change in the workers' disability compensation law may render a prior determination obsolete or erroneous *for future purposes*. Generally speaking, in such a situation one employee should not be "accorded a [workers' disability compensation] treatment different from that given to other [employees] of the same class." *Sunnen, supra* at 599. As the *Sunnen* Court observed:

[The] principle [of res judicata or estoppel by judgment] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities . . . . [*Id.*]

As the preceding cases illustrate, res judicata

does not always preclude a redetermination where there has been a subsequent change in the law. Nevertheless, we are not required to rest our decision in this case on so broad a proposition; the issue presented here is narrower and more limited.

B

In this case the defendant SIF is not challenging plaintiff's "eligibility" for workers' compensation benefits; rather, it is only the "amount" of his benefits which is at issue.

In *Leskinen v Employment Security Comm,* 398 Mich 501, 508-509; 247 NW2d 808 (1976), this Court distinguished between determinations concerning an employee's "eligibility" for benefits and the "amount" of benefits which an employee may eventually receive. Although *Leskinen* did not implicate the same provision[9] of the WDCA, the distinction drawn in that case between "eligibility" and "amount" is instructive and applicable:

> *Eligibility* for benefits under the act is established when an employee proves that he has suffered a personal injury which arose "out of and in the course of employment." MCL 418.301(1); MSA 17.237(301)(1). *Van Atta v Henry,* 286 Mich 379; 282 NW 185 (1938). It is only after this threshold determination that the *amount* of benefits is then computed. [Emphasis in original. See also *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 226; 210 NW2d 360 (1973).]

In this case, the hearing referee found that plaintiff suffered from total and permanent disability and ordered defendant SIF to pay benefits beginning on January 1, 1980. Only after such a

[9] In *Leskinen,* the Court was concerned with the construction of MCL 418.371; MSA 17.237(371).

determination did the referee conclude that plaintiff's wife was a dependent in accordance with § 353(1)(a)(i), thereby increasing plaintiff's award. Whether plaintiff's wife was a dependent did not bear on plaintiff's eligibility to receive workers' compensation benefits; however, it was a factor in calculating the amount or level of benefits which he would receive. Accordingly, the addition or deletion of § 353 benefits affects only the "amount" of plaintiff's award, and not his original "eligibility" for workers' compensation benefits.

The amount of benefits awarded to an injured employee is subject to change upon the occurrence of various events. For example, as this Court said in *Goines v Kelsey Hayes Wheel Co,* 294 Mich 156, 158; 292 NW 686 (1940):

> It is an accepted principle of law in this State that an award of compensation may be modified by a showing of a change in the physical condition that affects the earning power of the party receiving such award.

We explained in *Houg v Ford Motor Co,* 288 Mich 478, 481; 285 NW 27 (1939), that

> [t]he doctrine of *res judicata* is limited in its operation when sought to be applied to man's physical condition which constantly changes *and under a statute which provides that weekly payments may be reviewed and ended, diminished, or increased as the facts warrant . . . .* [Emphasis supplied.]

If the employee's condition worsens, his benefits may be increased. See *Murray v Ford Motor Co,* 296 Mich 348, 355; 296 NW 284 (1941); *Webber v Steiger Lumber Co,* 322 Mich 675, 680; 34 NW2d 516 (1948). Of course, if the employee's condition

improves, his employer may file a petition to reduce or terminate payments. See *Dyer v McQuistion,* 273 Mich 327; 263 NW 73 (1935). In *Sauch v Studebaker Corp,* 232 Mich 147; 205 NW 120 (1925), this Court held, under 1915 CL 5449, that an employee's benefits were to be reduced where he failed to show up for a scheduled medical examination.

Further examples demonstrating that the amount of an employee's benefits is subject to change may be found in the WDCA. Under § 352, the award of certain workers injured between September 1, 1965, and December 31, 1979, was enhanced by a weekly cost-of-living supplement beginning January 1, 1982. See *Maglothin v Tryco Steel Corp,* 137 Mich App 640; 357 NW2d 914 (1984). Another provision, § 357, requires that an employee's benefits be reduced five percent each year after he reaches age sixty-five. Under § 353(2), an employee whose benefits are increased because dependent children are living with him, suffers a benefit decrease as each of the children attains the age of eighteen. See *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976), wherein this Court stated:

> While we recognize that the doctrine of res judicata is applicable to workmen's compensation proceedings, compensation awards represent "an adjudication as to the condition of the injured workman at the time it is entered, and conclusive of all matters adjudicable at that time, but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award upon a showing that the employee's physical condition has changed." Just as one's *physical condition* may change with the passage of time, so too can one's *status* vary from one day to the next. [Emphasis in original.]

Because the amount of an employee's award is never final, res judicata principles do not apply to a change in the amount of benefits the claimant receives. This is consistent with the flexible nature of the workers' compensation system which permits redetermination of the amount of a claimant's benefits.[10]

Accordingly, we hold that res judicata is inapplicable in the instant case because relitigation of § 353 benefits merely permits a subsequent modification of the amount of plaintiff's award.

IV

Having decided that res judicata is not a bar, we turn next to the question how our ruling is to be applied, particularly if it should be determined that plaintiff's wife was not in fact a dependent.

Defendant SIF argues that our ruling should be applied retroactively so as to require repayment by plaintiff of dependency benefits already received—at least those benefits received after March 2, 1982, the date *Day* was decided. While such notice as *Day* provided may be considered in determining the retroactivity issue, because *Day* focused on a different provision of the act, we do not regard the date of that decision to be controlling in this case.

In 1932, the United States Supreme Court ruled

---

[10] The dissent claims that we have ignored the legislative direction that issues of dependency are to be determined "as the fact may be at the time of the injury." *Post,* p 619. However, a reading of the full text of § 353 makes clear that a dependency determination under § 353(1)(b), which includes such a direction is made only if the conclusive presumption under § 353(1)(a)(i) does not apply. Therefore, the parties never addressed dependency under § 353(1)(b). In fact, plaintiff and defendant contest whether Mrs. Pike would be a factual dependent under § 353(1)(b). The parties did not litigate dependency under § 353(1)(b), nor could they have, because of the application of § 353(1)(a)(i). Accordingly, § 351(1)(b) does not apply, and even if it does apply, it leads to the conclusion that dependency benefits may be relitigated.

that the federal constitution does not inhibit state courts in determining whether their own law-changing decisions should be applied retroactively or prospectively. *Great Northern R Co v Sunburst Oil & Refining Co,* 287 US 358; 53 S Ct 145; 77 L Ed 360 (1932).

Although it is, of course, not binding on the states, the United States Supreme Court has provided guidance in resolving the retrospective/prospective dilemma by identifying certain factors or considerations to be evaluated. In *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), the Court ruled that its lawmaking decision in *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (requiring states to exclude evidence seized in violation of the Fourth Amendment) should not be applied retrospectively. In reaching that decision, the Court weighed: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.[11]

While this Court has not always articulated the criteria used in reaching decisions in this area, Justice MOODY has commented that

> as a rule [the Michigan Supreme Court] follows the reasoning developed in the United States Supreme Court with emphasis upon the factors present in the three-pronged *Linkletter* test. [Moody, *Retroactive application of law-changing decisions in Michigan,* 28 Wayne L R 439, 462 (1982).]

This Court looked to the *Linkletter* test in deciding *People v Hampton,* 384 Mich 669; 187 NW2d

---

[11] Thereafter, in a civil case, *Chevron Oil Co v Huson,* 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), the Court applied essentially the same test with the addition of a threshold consideration: Does the decision clearly establish a new principle of law?

404 (1971), and *People v Kamin,* 405 Mich 482; 275 NW2d 777 (1979).

Applying the *Linkletter* test in the instant case, we note that the purpose of the rule we announce today is to accord equal protection to wives and husbands. This purpose would not be advanced by requiring plaintiff to repay dependency benefits already received. The factors of reliance on the old rule and the effect on the administration of justice are often considered together. See *Hampton, supra* at 677; *Kamin, supra* at 495. Without a doubt, reliance on the conclusive presumption of dependency was very great. In addition to providing an intended benefit for persons such as plaintiff, it is apparent that the conclusive statutory presumption was designed as an administrative convenience. The Legislature sought to dispense altogether with the necessity in particular circumstances of adjudicating a wife's factual dependency on a case-by-case basis. Although that design has been frustrated by our holding that the conclusive presumption is invalid, the administration of justice would not be served by requiring the repayment of benefits. While the requirement of case-by-case determination necessarily imposes an additional burden on the administration of justice, we note that the burden would be heavier if our ruling were to be applied retroactively.[12]

After weighing all the circumstances, we would hold in the interest of fairness that plaintiff in this case should not be required to repay dependency benefits received prior to the date of this opinion

---

[12] Of course, the burden necessarily imposed upon the administration of justice by our decision could be lifted if the Legislature were to see fit to extend the conclusive presumption to husbands and wives on an equal basis.

in the event it should be determined that his wife was not in fact a dependent.[13]

## V

We reverse and remand this case to the Workers' Compensation Appeal Board for further proceedings consistent with this opinion.

RILEY, C.J., and LEVIN, J., concurred with GRIFFIN, J.

BRICKLEY, J. (*concurring*). Traditional tort and contract jurisprudence is designed to determine and vest parties' interests for past and future damages completely and finally as of one particular time. It is in this context that the concept of res judicata has been developed. As a component of the theoretical framework of that jurisprudence, res judicata "seeks to lend fairness and finality to the law." *Post,* p 612 (BOYLE, J.).

It is evident, however, that the traditional concept of res judicata cannot be severed from its tort and contract law moorings and transplanted without refinement into the law governing workers' compensation cases. Our statutorily based workers' compensation system contains its own quasi-judicial and administrative structure and is designed to provide injured workers with income maintenance on a continuing basis.[1] "[W]e have . . . consistently emphasized that workers' compensation is a matter of statutory grace." *Selk*

---

[13] See *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 (1981).

[1] The attempted application of res judicata has generated inconsistency and confusion at all levels of adjudication and review of workers' compensation cases. See, e.g., *Riley v Northland Geriatric Center,* 431 Mich 632; 433 NW2d 768 (1988) (resolving split in Court of Appeals regarding proper application of res judicata to cases decided prior to *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 [1981]).

*v Detroit Plastic Products,* 419 Mich 1, 11; 345
NW2d 184 (1984).

As Justice Levin emphasized in his concurring
opinion in *Franks v White Pine Copper Co,* 422
Mich 636, 683; 375 NW2d 715 (1985), reh den 424
Mich 1202 (1985):

> The nature of workers' compensation is that
> events after an award of benefits may change the
> extent of an entitlement to benefits. A disabled
> worker may cease to be disabled or obtain gainful
> employment. The number of the worker's depen-
> dents may change. The right to receive workers'
> compensation benefits thus generally depends on
> one's status, week by week, and is subject to
> change during any week.[2]

On the other hand, res judicata is designed to
prevent the unraveling and relitigation of what
was intended to be a final determination of inter-
ests without regard to future events.[3] Finality is
the goal of res judicata. Finality is not in the
design or the interest of the workers' compensa-
tion scheme.[4]

In the tort system, a single, vested award is

---

[2] See, e.g., the following sections of the Workers' Disability Compen-
sation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* specifically
§§ 301(5), 351(1), 361(1) and 401(3). Similar considerations would apply
in the unemployment compensation context. See MCL 421.32(d); MSA
17.534(d) (providing that the issuance of each benefit check constitutes
a determination of qualification and eligibility for unemployment
benefits).

[3] See *Federated Dep't Stores, Inc v Moitie,* 452 US 394, 401; 101 S
Ct 2424; 69 L Ed 2d 103 (1981).

[4] I recognize that under the WDCA, it is provided for at the time of
the initial determination that the future occurrence of certain, spe-
cific events will bring about specific consequences for a claimant's
eligibility or benefits. In contrast, the present situation involves an
unanticipated change in what the law was thought to be. Neverthe-
less, the provisions of the act which authorize reevaluation and
corresponding benefit changes make clear that workers' compensation
is a unique system which is designed to keep benefits current and
responsive to changing events and circumstances.

made on the basis of a prediction of future damages and needs, so that review of the judgment in light of subsequent events is foreclosed. All parties to a tort judgment thus bear the risk that future events will vary from the prediction embodied therein. By contrast, workers' compensation awards are intended to remain open and subject to modification in the interest of the stability and remedial nature of the system. See *Franks, supra,* 653-654; *Hlady v Wolverine Bolt Co,* 393 Mich 368, 391; 224 NW2d 856 (1975) (LEVIN, J., concurring).

In this light, I see the principle of res judicata as set forth in the opinion of Justice BOYLE playing a useful but limited purpose in the workers' compensation context. Where appropriate, I would apply res judicata in accordance with the principles articulated by Justice BOYLE to all payments and benefits awarded or denied pursuant to an earlier determination, but only until such time as a subsequent petition based on changed circumstances that would not have been present at the previous litigation is filed and the issues presented are resolved. Prior to such a second determination, the prior determination controls and the award or denial of benefits pursuant to the prior determination is not subject to the subsequent determination.

Because of the nature and design of the workers' compensation system, future determinations based on events that have occurred subsequent to the previous litigation should control the award and amount of future benefits.[5]

On the other hand, this Court has continually sought to prevent benefit recipients from being

---

[5] As noted in n 2, the Legislature has provided for redetermination when certain factual changes occur. A change in the law may be effected either through statutory amendment or judicial decision. In case of the former, our primary task is to ascertain the intent of the Legislature regarding the effect of the change. *Franks, supra.*

twice visited by misfortune and has not required the repayment of benefits already received.[6] The concept of res judicata that I would apply, when a judicial decision changes the law, incorporates such considerations of fairness and protects recipients who have reasonably relied on circumstances prevailing when payments pursuant to the prior determination were made. Accordingly, this concept does not permit the undoing of a determination or adjudication as to benefits already received and therefore "vested." By the same token, the employer is not required to pay benefits which were denied pursuant to the prior determination. This approach comports with the policy underlying the traditional res judicata doctrine, while at the same time taking into account the unique characteristics of income-maintenance schemes.

I agree with Justice Boyle that the defendants had ample opportunity to raise the constitutional claim at the prior proceedings. Thus, my disagreement does not involve the question whether an exception to res judicata should apply, but rather whether the application of the res judicata concept in cases arising out of income-maintenance systems such as workers' compensation permits redetermination in light of an intervening change in the case law. Because I agree with Justice Griffin's holding regarding the gender-based presumption at issue here, I agree that the doctrine of res judicata does not bar a redetermination of the issue of Ms. Pike's dependency in light of this finding of unconstitutionality. I would therefore remand the case to the wcab for it to determine whether or not Ms. Pike was in fact a dependent at the time of Mr. Pike's injury. If it is found that she was not in fact a dependent at that time, the

---

[6] *Ante,* pp 604–605 (Griffin, J.). See also *Gusler,* n 1, *supra,* 298.

dependency benefits should be reduced accordingly as of the date of that determination.[7]

BOYLE, J. (*dissenting*). We are asked to decide in this case whether the determination of a wife's dependency for the purpose of calculating an injured worker's wage-loss compensation benefits may be relitigated when the statutory presumption of dependency applicable at the time of an earlier determination is now alleged to be unconstitutional. The majority, sub silentio, overrules *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975), and *Gose v Monroe Auto Equipment Co,* 409 Mich 147; 294 NW2d 165 (1980), while concluding that res judicata does not bar a collateral attack on a final award in workers' compensation proceedings on the basis of an intervening change in the law. The abandonment of the carefully crafted doctrine of res judicata in workers' compensation proceedings is unsupported by treatise, statute, or prior decision of this Court. The dismissal of defendants' petition for benefit reduction was properly granted. I would affirm the judgment of the workers' compensation appeal board.

I

Ronald Pike, already adjudicated a disabled worker, alleged that he qualified as totally and permanently disabled in late fall of 1979. He petitioned the Bureau of Workers' Disability Compen-

---

[7] As explained above, p 607, a redetermination after a judicial change in the law must be preceded by a *petition* "based on changed circumstances that would not have been present at the previous litigation . . . ." The "changed circumstances" for present purposes are the opinions issued today, which hold the conclusive presumption in § 353(1)(a)(i) to be unconstitutional. In the interest of administrative economy, I would allow the remand to the WCAB in this case to satisfy the above petition requirement.

sation for total and permanent disability benefits
on May 14, 1979. The City of Wyoming and the
Second Injury Fund contested the claim.

Mr. Pike's petition was put to the test in pro-
ceedings before the bureau on October 20, 1980.
With the assistance of counsel, Ronald Pike pre-
vailed. A decision of the hearing referee, Erwin
Johnson, mailed May 21, 1981, ruled that Mr. Pike
was indeed totally and permanently disabled. The
defendants chose not to appeal that decision. Thus,
under § 851 of the act,[1] the decision of the bureau
became final on June 4, 1981.

Ronald Pike's final award of wage loss benefits
included five dollars per week for the dependency
of his wife. Mrs. Pike's dependency had not been
factually established during the litigation before
the bureau because the act provides that Mrs. Pike
is "conclusively presumed" a dependent, MCL
418.353(1)(a)(i); MSA 17.237(353)(1)(a)(i). The defen-
dants chose not to contest the validity of that
provision in those proceedings.

On July 11, 1983, two years after the order of
the bureau was final, the defendants attempted to
reopen this litigation. The defendants claimed that
the conclusive presumption of Mrs. Pike's depen-
dency violated the Equal Protection Clause of US
Const, Am XIV. Quite reasonably, both the bu-
reau[2] and the workers' compensation appeal board[3]
refused to entertain further litigation of this mat-
ter. Both cited the final, unappealed order of the
bureau and the doctrine of res judicata. The Court
of Appeals denied the defendants' application for
leave to appeal.[4]

---

[1] MCL 418.851; MSA 17.237(851).

[2] Order of the hearing referee, Erwin Johnson, mailed December 8,
1983.

[3] 1986 WCABO 63.

[4] Order of the Michigan Court of Appeals dated May 9, 1986.

A

Today, a majority of this Court holds that the conclusive presumption of Mrs. Pike's dependency is unconstitutional. The same majority holds, as an afterthought, that res judicata does not preclude the reopening of this litigation by the defendants. In doing so, the majority abandons the principle of finality in workers' compensation proceedings. Henceforth, the final orders of the bureau, the appeal board and presumably even the orders of this Court, are valid only for that period of time required for a change in the decisional law allegedly entitling a losing party to relief in a new petition before the bureau.

The change in decisional law to which the defendant here refers is this Court's ruling in *Day v W A Foote Memorial Hosp,* 412 Mich 698, 703; 316 NW2d 712 (1982), in which we found the statutory presumption of dependency for widows in MCL 418.331(a); MSA 17.237(331)(a)[5] violative of the Equal Protection Clause as applicable under the Fourteenth Amendment.[6]

The majority accepts this analysis and concludes that the statute is unconstitutional without first answering whether defendants can raise this question by a collateral attack on a final order. It should be obvious that the status of plaintiff's

---

[5] MCL 418.331; MSA 17.237(331) provides in part:

The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:
(a) A wife upon a husband with whom she lives at the time of his death, or from whom, at the time of his death, a hearing referee or worker's compensation magistrate, as applicable, shall find the wife was living apart for justifiable cause or because he had deserted her.

[6] See *Wengler v Druggists Mutual Ins Co,* 446 US 142; 100 S Ct 1540; 64 L Ed 2d 107 (1980).

wife's dependency can become an issue in this case only if two preconditions are satisfied; first, that these defendants can challenge the constitutionality of § 353(1)(a)(i) and, second, that § 353(1)(a)(i) is unconstitutional. It is simply a non sequiter to conclude, as does the lead opinion, that the gender-based presumption is unconstitutional and "in light of that holding" to then consider "whether res judicata bars redetermination of the unappealed finding that plaintiff's wife was a dependent at the time of plaintiff's injury." *Ante,* p 595.

The majority does not contest the applicability of the doctrine of res judicata in workers' compensation cases. Nor does the majority explicitly confront the fact that this Court has repeatedly held that an intervening change in the law is not an exception to res judicata. *Gose* and *Hlady, supra.* That doctrine prevents the relitigation of facts and law "between the same parties or their privies." *Curry v Detroit,* 394 Mich 327, 331; 231 NW2d 57 (1975), citing *Tucker v Rohrback,* 13 Mich 73 (1864). Its purpose is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v McCurry,* 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). In short, res judicata seeks to lend fairness and finality to the law. See also *Hackley v Hackley,* 426 Mich 582, 585; 395 NW2d 906 (1986).

In Michigan, the scope of the doctrine is well defined. It applies not only to issues of fact and law which were actually litigated and decided, but also to any issue which might have been litigated at that time. *Curry, supra,* p 332; *Gursten v Kenney,* 375 Mich 330; 134 NW2d 764 (1965). See also *Hackley, supra.* Therefore, if during the adjudication of

a dispute a pertinent issue of law or fact is raised and decided, or properly should have been raised, res judicata will bar the relitigation of that issue in a subsequent action.

The rule of res judicata appeals to common sense and is familiar to all students of the law. As formulated in 1 Restatement Judgments, 2d, § 18(2), p 152, the rule provides:

> In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

It is indisputable that the law of judgments applies to workers' compensation. The Legislature has provided:

> Any party may present a certified copy of an order of a hearing referee, the director or the board in any compensation proceeding to the circuit court of the circuit in which the injury occurred, or to the circuit court of the county of Ingham if the injury was sustained outside this state. The court, after 7 days' notice to the opposite party or parties, shall render judgment in accordance therewith unless proof of payment is made. The judgment shall have the same effect as though rendered in an action tried and determined in the court and shall be entered and docketed with like effect. [MCL 418.863; MSA 17.237(863). See also *Theodore v Packing Materials,* 396 Mich 152; 240 NW2d 255 (1976), and *Gose, supra.*]

The parties agree that the issue of law regarding the constitutionality of § 353(1)(a)(i) was not raised in the original unappealed action. There is no question that the constitutionality of § 353(1)(a)(i) was pertinent in the first proceeding and that the defendants' failure to raise the issue is not excusable. In light of the fact that defendants now chose

to contest the issue, it cannot be successfully claimed that a constitutional challenge at the first proceeding would have been unusual or burdensome. The issue was clearly foreseeable.

In *Wengler v Druggists Mutual Ins Co,* 446 US 142; 100 S Ct 1540; 64 L Ed 2d 107 (1980), on which we relied in *Day, supra,* the Court struck down a widow dependency provision similar to that found in § 331(a) as violative of the Equal Protection Clause. *Wengler* had been the law for over one year when the issue of dependency in this case was contestable. Additionally, given the fact that the United States Supreme Court, prior to *Wengler,* had invalidated at least six statutes containing, or practices founded upon, gender-based classifications,[7] it could not be argued that a gender-based challenge at the initial proceedings would have been either novel or extraordinary.[8] Moreover, the defendants were clearly bound by a rule articulated five years before the final order in this case (reaffirmed by six members of this Court three years before that order) that a change in decisional law does not permit a relitigation of a final award of compensation benefits, *Hlady, supra; Gose, supra.*

In *Hlady,* p 380, we observed in words equally applicable to these defendants,

---

[7] *Califano v Goldfarb,* 430 US 199; 97 S Ct 1021; 51 L Ed 2d 170 (1977); *Craig v Boren,* 429 US 190; 97 S Ct 451; 50 L Ed 2d 397 (1976); *Stanton v Stanton,* 421 US 7; 95 S Ct 1373; 43 L Ed 2d 688 (1975); *Weinberger v Wiesenfeld,* 420 US 636; 95 S Ct 1225; 43 L Ed 2d 514 (1975); *Frontiero v Richardson,* 411 US 677; 93 S Ct 1764; 36 L Ed 583 (1973); *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971).

[8] See also 4 Davis, Administrative Law (2d ed), § 26:6, pp 434-441. By statute, the bureau is empowered to resolve "[a]ny dispute or controversy concerning compensation or other benefits . . . ." MCL 418.841(1); MSA 17.237(841)(1). While admittedly constitutional questions "are beyond the purview of the WCAB," *Williams v Hofley Mfg Co,* 430 Mich 603, 624, n 27; 424 NW2d 278 (1988), they are not beyond the purview of the Court of Appeals or this Court.

Plaintiff may not concede an issue, necessarily determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief. The doctrine of res judicata bars this from happening. Mary Hlady could have as easily raised this issue as Peter Van Dorpel. It was, in fact, incumbent upon her to do so if she wished to avail herself of that interpretation.

In simple fact, the defendants ask us to permit an attack on a final award despite the fact that the constitutionality of § 353(1)(a)(i) was not raised before the referee and the defendants opted not to appeal to the WCAB, the Court of Appeals, or this Court. Only two years after this case finally was decided, did the defendants seek to contest the validity of § 353(1)(a)(i). "The doctrine of res judicata bars this from happening." *Hlady, supra,* p 380.

B

As I have previously noted, no one explicitly contests the applicability of the doctrine of res judicata in workers' compensation cases. The lead opinion ostensibly reaffirms application of the doctrine when it states:

> That res judicata principles are applicable in the workers' compensation context has been recognized by this Court. *Hlady v Wolverine Bolt Co,* 393 Mich 368, 375; 224 NW2d 856 (1975); *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976); *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 161; 294 NW2d 165 (1980). [*Ante,* p 595.]

Nevertheless, it fails to acknowledge that our prior

decisions do not permit today's result and makes no effort to distinguish or expressly overrule them.

The majority fails to acknowledge that the facts of *Hlady* are indistinguishable from those of this case. Hlady lost four fingers in a punch press accident and received the statutory one hundred weeks of compensation for the specific loss of her hand. See MCL 418.361(2)(h); MSA 17.237(361)(2)(h) (now 215 weeks). At expiration of the one-hundred-week statutory period, Hlady sought further disability compensation. Despite her continuing disability in fact, Hlady was denied continuing disability benefits. See *Hlady, supra,* p 373. Subsequently, Hlady again sought continuing disability benefits on the basis of an alleged change in decisional law allowing continuing benefits after the expiration of the statutory period for specific losses. This Court denied continuing benefits, explaining:

> Mary Hlady's physical condition has not changed since her 1945 injury. The only change has been in the law applied to cases of this nature. However, it has long been the law of this state, starting with the leading case of *Jacobson v Miller,* 41 Mich 90; 1 NW 1013 (1879), that the doctrine of res judicata applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation. [*Hlady, supra,* p 376.]

There is no principled distinction between *Hlady* and the instant case. In both cases, unsuccessful litigants have sought to reopen a final workers' compensation decision to take advantage of an alleged intervening change of law. It is plain that the majority, sub silentio, overrules *Hlady.*

*Theodore v Packing Materials, supra,* also cited

by the lead opinion, in fact holds that the Court will permit a redetermination of dependency *where a statutory exception applies,* but that res judicata bars an unappealed dependency determination that does not fall within a statutory exception. In *Theodore,* the Court reviewed a collateral attack by a second petition initiated after the defendant had failed to appeal the initial hearing referee's decision that the natural children of a deceased employee were conclusively presumed to be his dependents. The defendant's petition to terminate death benefits alleged both that the children had been legally adopted prior to the employee's death and that they had reached the age of sixteen, the date on which the presumption terminated under law. Notwithstanding the fact that we stated that "in future cases" adopted children should not be found to be dependents, the Court held that the referee's ruling had become final and res judicata barred the defendant's attempts to terminate, on grounds of adoption, payments owed to the children up to the age of sixteen. On the other hand, pursuant to the express language in the statute, the *Theodore* defendant was allowed to challenge the fact that the recipients were over sixteen and no longer dependents. 396 Mich 154.[9]

---

[9] The relevant sections of the statute in *Theodore,* similar to those of the current act § 353(1)(a)(ii), provided that children under the age of sixteen, unless physically or mentally incapacitated, were entitled to the presumption of dependency under the act subject to the exception that on attaining the age of sixteen, the issue of dependency may be reconsidered. Thus, the Legislature specifically excepted a child's dependency status redetermination upon the occurrence of certain triggering events. No such redetermination, however, is provided for under the act in the case of a conclusively dependent spouse. Under § 353(1)(a)(i), the wife of an injured employee is conclusively presumed to be the dependent of her injured husband regardless of any future change in her status. Consequently, our ruling in *Theodore* actually supports the rule that, apart from statutorily provided exceptions, res judicata is applicable to workers' compensation pro-

Similarly, in *Gose, supra,* a five-member majority of this Court[10] refused to allow relitigation of the plaintiff's claim for benefits on the basis of insanity when it had been previously fully and finally litigated on the basis of a physical injury. In the companion case of *Sanders v General Motors Corp,* 409 Mich 147; 294 NW2d 165 (1980), six members of this Court refused, in the absence of a change of physical condition, to allow the plaintiff to relitigate her claim for total and permanent disability benefits on the basis of "a subsequent change in the law," *Gose, supra,* p 181 (WILLIAMS, J., and MOODY, J., concurring).

Thus, under the prior rulings of this Court, the doctrine of res judicata bars relitigation of this matter.

C

En route to its conclusion, the majority also observes that the workers' compensation act provides for modification of an award under certain circumstances. However, the exceptions recognized by the Legislature do not support the majority's conclusion. Thus, the majority does not acknowledge the fact that the act provides for modification of a disability award only under clearly defined circumstances and that the act does not provide for redetermination of dependency in this circumstance.

ceedings and operates in this case to bar the relitigation of plaintiff's wife's dependency when no provision under the act provides for the relitigation of this issue.

*Theodore* and *Hlady* also demonstrate that it is immaterial whether the parties actually litigated the issue or did not do so because of § 353(1)(a)(i).

[10] A sixth member of the *Gose* Court, Justice WILLIAMS, agreed that res judicata was generally applicable in workers' compensation proceedings, but believed that it was not applicable under the facts presented.

Initially the majority fails to recognize that the Legislature does not characterize dependency as continuously contestable. Unlike MCL 418.351; MSA 17.237(351), which allows for the redetermination of the question of total and permanent disability after a period of eight hundred weeks on the basis of a change of facts, the Legislature has not provided for general redetermination of dependency questions. In fact, the Legislature has expressly provided that all issues of dependency are to be determined: "as the fact may be at the time of the injury . . . ."[11]

The clear intention of the Legislature is that issues of dependency are not to be redetermined except in the case of self-support of a minor between sixteen and eighteen years of age or the divorce or death of a dependent spouse, § 353(2). No other exception is provided for the relitigation of dependency. Thus, the act provides no support for the conclusion that a legislative distinction between eligibility and the level of benefits to which a claimant is entitled permits the relitigation of issues concerning the "amount" of one's benefits. In fact, this conclusion ignores the legislative direction that issues of dependency are to be determined "as the fact may be at the time of the injury."[12]

The majority's construction of § 353 produces the incongruous result that dependency resolu-

[11] MCL 418.353(1)(b); MSA 17.237(353)(1)(b). This rule is consistent with MCL 418.341; MSA 17.237(341), which requires that dependency issues concerning death benefit recipients are decided as of the date of injury to the employee.

[12] This directive is not contradicted by the conclusion of the lead opinion that § 353(1)(b) applies only if the dependency presumption in § 353(1)(a)(i) is inapplicable. Rather, the full text of § 353 expresses the legislative view that, regardless of whether dependency is found through the presumption in § 353(1)(a)(i) or through a factual determination under § 353(1)(b), dependency issues are to be finally decided no later than the appellate stage before the WCAB.

tions under § 353(1)(b) are made as the facts "may be at the time of the injury," but dependency based on the legislatively created presumption is indefinitely contestable. This construction also is inconsistent with the parallel dependency provisions for death benefit recipients, that after likewise providing for conclusive benefits for a wife, for dependency in fact, and for specific exceptions (§§ 321, 331 and 335) provide:

> Questions of dependency shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent changes in conditions . . . (except as noted above).

There also is no basis in law for the conclusion that the principle of finality applies only to rulings as to eligibility and not to rulings regarding the amount of benefits. The case law cited by the lead opinion lends no support to the proposition that only "eligibility" is subject to the law of res judicata. *Leskinen v Employment Security Comm,* 398 Mich 501; 247 NW2d 808 (1976), includes no discussion of res judicata. Indeed, at the time that our decision was released in *Leskinen,* there had been no final decision. Res judicata *could not* have been at issue. The distinction between eligibility and the amount of benefits for which the majority cites *Leskinen* was relevant only to the Court's discussion of earning capacity.[13]

*Goines v Kelsey Hayes Wheel Co,* 294 Mich 156; 292 NW 686 (1940), is also distinguishable in that it involved the well-established exception to res judicata in workers' compensation proceedings for

---

[13] The citation of *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 226; 210 NW2d 360 (1973), is similarly misplaced because it too only identifies the significance of an injured worker's wage-earning differential as affecting wage-earning capacity as opposed to one's eligibility for benefits.

a change of physical condition. Moreover, no change of condition was found in *Goines* and therefore, even this narrow exception was held to be inapplicable. Indeed, as the facts and holding of *Goines* demonstrate, even if this exception were applicable, it would not apply to the *amount* of benefits, but to the plaintiff's *eligibility*.[14] In my view, this narrow exception for a change of condition serves only to provide additional support for the continuing validity of the rule of res judicata.

Finally, the fundamental logical flaw in this analysis is the assumption that the rule of res judicata follows from the distinction between an entitlement and a benefit. Even if the Legislature had said, which it clearly has not, that dependency is generally contestable on *a change in facts,* it would not follow that a second petition could be filed on the basis *of the identical facts* resolved in a prior determination that had become final. The issue in this case is not whether benefit levels remain open, but rather whether the defendants may challenge this final award on the basis of an alleged change in constitutional law. As *Theodore, Hlady,* and *Gose* demonstrate, a collateral attack *on the same claim and the same facts* solely on the basis of a judicial decision rendered after a final nonappealed award is barred by the doctrine of res judicata. Therefore, it does not follow from the fact that the Legislature permits an issue (whether of entitlement or benefits) to remain subject to challenge on the basis of new facts, that a collateral attack is permitted on a final award on *the same claim based upon the identical facts.*

---

[14] Similarly, in *Houg v Ford Motor Co,* 288 Mich 478; 285 NW 27 (1939), *Murray v Ford Motor Co,* 296 Mich 348; 296 NW 284 (1941), *Webber v Steiger Lumber Co,* 322 Mich 675; 34 NW2d 516 (1948), *Dyer v McQuistion,* 273 Mich 327; 263 NW 73 (1935), and *Sauch v Studebaker Corp,* 232 Mich 147; 205 NW 120 (1925), also cited by the majority, the issue was a change of physical condition.

**D**

Turning to our prior decisions outside of the context of workers' compensation, the lead opinion cites *Socialist Workers Party v Secretary of State,* 412 Mich 571, 585; 317 NW2d 1 (1982), for the rule that res judicata does not bar the relitigation of an issue previously decided when there has been a change in the law or facts upon which that issue was decided. The *Socialist Workers Party* majority relied on what is now § 28(2)(b) of the Restatement to find an exception to the bar of res judicata. That section reads in part:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

\* \* \*

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . . [1 Restatement Judgments, 2d, § 28, p 273.]

Section 28(2)(b), however, has no bearing on this case. It is a rule of *issue* preclusion or collateral estoppel, rather than a restatement of the principles of claim preclusion, or merger and bar, under res judicata.[15] The Restatement is quite clear on this distinction as noted in § 13:

---

[15] See *Hlady, supra,* p 377, citing with approval the decision of the United States Supreme Court in *Partmar Corp v Paramount Pictures Theatres Corp,* 347 US 89, 90-91; 74 S Ct 414; 98 L Ed 532 (1954), which distinguished the rules of res judicata and collateral estoppel:

" 'We have often held that under the doctrine of *res judicata*

The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. [*Id.,* p 132.]

When, as in this case, an award is entered in favor of the plaintiff, "the claim is extinguished and merged in the judgment and a new claim may arise on the judgment." 1 Restatement Judgments, 2d, § 17(2), p 148. Thereafter, parties may not seek to relitigate the original claim or any part of that claim. Specifically, § 18(2) of 1 Restatement Judgments, 2d, provides:

In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action. [*Id.,* p 152.]

The lead opinion thus has failed to recognize that *Socialist Workers Party* does not support the conclusion that res judicata does not bar the defendant's claim.[16]

a judgment entered in an action conclusively settles that action as to all matters that were *or might have been litigated or adjudged therein.* But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." This latter aspect of *res judicata* is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation.' " [Emphasis added.]

[16] Issue preclusion under the Restatement is set out in § 27:

E

Finding no support for its holding in the law of this state, the lead opinion turns to federal precedent. There is, however, no support in federal law for the conclusion that res judicata must "yield" in this situation to a change in the law. The lead opinion cites *Internal Revenue Comm'r v Sunnen,* 333 US 591; 68 S Ct 715; 92 L Ed 898 (1948), for this proposition, while acknowledging that "the analogy is by no means perfect," and that the decision does not rest on this basis.

The lead opinion's reliance on *Sunnen* is misplaced. In *Sunnen,* the United States Supreme Court held that royalty payments arising from

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. [*Id.,* p 250.]

The introductory note to this title underscores the necessary distinction between issue preclusion and res judicata, stating that issue preclusion is applicable only when "the claim is not precluded by the doctrines of merger or bar." *Id.,* p 249. The rules of merger and bar are set out in § 17:

> A valid and final personal judgment is conclusive between the parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment (see § 18);
>
> (2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment bars a subsequent action on that claim (see § 19);
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment (see § 27). [*Id.,* p 148.]

Under the Restatement view, a judgment for either a plaintiff or a defendant is conclusive with respect to any essential point actually litigated.

certain license contracts not involved in an earlier tax proceeding, and which concerned different tax years, were "free from the effects of the collateral estoppel doctrine." *Id.,* p 602. Thus, *Sunnen* is neither binding nor persuasive precedent because it did not involve the application of res judicata. Even if we were to assume that the case at bar involved the doctrine of collateral estoppel, the Supreme Court's decision in *United States v Moser,* 266 US 236, 242; 45 S Ct 66; 69 L Ed 262 (1924), clearly illustrates that the defendants' claim must fail. In holding that the federal government was estopped from relitigating whether service as a military cadet constituted "service during the Civil War" for the purpose of calculating the claimant's retirement benefits, the Court stated:

> [A] *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law. That would be to affirm the principle in respect of the thing adjudged but, at the same time, deny it all efficacy by sustaining a challenge to the grounds upon which the judgment was based. A determination in respect of the status of an individual upon which his right to recover depends is as conclusive as a decision upon any other matter. [Emphasis in the original, citations omitted.]

More significantly, and more recently, in *United States v Stauffer Chemical Co,* 464 US 165, 172-173, n 5; 104 S Ct 575; 78 L Ed 2d 388 (1984), the United States Supreme Court refused to extend the *Sunnen* rule beyond its applicability in tax cases "reject[ing] its general applicability outside of [sic] that context." Thus, the lead opinion's attempt to extend *Sunnen* by analogy to the facts

in this case should be rejected. The *Sunnen* rule has been recognized by the United States Supreme Court to be sui generis in the context of tax litigation. The case does not provide support for the lead opinion's construction of the applicability of res judicata in a workers' compensation proceeding.

II

The actual basis for the lead opinion's conclusion appears to be neither federal or state precedent nor a legislative distinction between benefits or entitlement. Rather, the basis for the majority result appears to be the reasoning in the *Hlady* concurrence:

> The law can be changed by legislative enactment or court decision. When the Legislature amends a statute, its applicability to a case previously adjudicated is not analyzed in terms of res judicata. The issue then is one of statutory construction: did the Legislature intend the amendment to have retroactive as well as prospective application? Where the change is effected by court decision the analysis should be the same, whether as a matter of policy the new rule of law should apply retroactively as well as prospectively. [*Hlady, supra*, p 387.]

This statement is in direct conflict with the majority's articulation of the rule of res judicata in *Hlady* and *Gose*. More importantly, however, the unsupported proposition that the power of the Court is coextensive with that of the Legislature is devoid of the judicial restraint necessary for recognition of the fundamental principles of fairness and repose that are the basis for the rule of res judicata.

The decisions of the United States Supreme
Court, as well as our own, teach the error of an ad
hoc judicial policy of reopening final judgments
except in the most compelling circumstances.[17] The
United States Supreme Court has ably articulated
the policy basis for res judicata in *Federated Dep't
Stores, Inc v Moitie,* 452 US 394; 101 S Ct 2424; 69
L Ed 2d 103 (1981):

> [T]he res judicata consequences of a final, unap-
> pealed judgment on the merits [are not] altered by
> the fact that the judgment may have been wrong
> or rested on a legal principle subsequently over-
> ruled in another case. . . . "A judgment merely
> voidable because based upon an erroneous view of
> the law is not open to collateral attack, but can be
> corrected only by a direct review and not by
> bringing another action upon the same cause [of
> action.]" [*Id.,* p 398.]

> [W]e do not see the grave injustice which would
> be done by the application of accepted principles of
> res judicata. "Simple justice" is achieved when a
> complex body of law developed over a period of
> years is evenhandedly applied. The doctrine of res
> judicata serves vital public interests beyond any
> individual judge's ad hoc determination of the
> equities in a particular case. . . . The Court of
> Appeals' reliance on "public policy" is similarly
> misplaced. This Court has long recognized that
> "[p]ublic policy dictates that there be an end of
> litigation; that those who have contested an issue
> shall be bound by the result of the contest, and

---

[17] We realize that in certain instances of a compelling nature public
policy may require the recognition of exceptions to res judicata. See,
e.g., 18 Wright, Miller & Cooper, Federal Practice and Procedure,
§ 4415, pp 121-135, citing *McCarty v First of Georgia Ins Co,* 713 F2d
609, 612-613 (CA 10, 1983) (res judicata not applicable when fraudu-
lent concealment of true facts by defendant prevents plaintiff from
showing cause of action); *Fehlhaber v Fehlhaber,* 681 F2d 1015, 1027
(CA 5, 1982) (res judicata not applicable when enforcement of prior
judgment would amount to a denial of due process); MCR 2.612(C)
(grounds for relief from judgment).

that matters once tried shall be considered forever settled as between the parties." We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. *It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . ."* [*Id.,* p 401. Citations omitted. Emphasis added.]

It is in the nature of decision making, whether judicial or legislative, that lines must be drawn. Thus, there is an unfortunate but inescapable arbitrary aspect to all rules of finality, including res judicata, waiver, or the application of statutory amendment. Perfect justice may not be possible in each case. What *is* possible is the fairness, repose and predictability that results when all are subject to the same rules. What is also possible, and of equal importance, is a certainty in the law to which all may conform their conduct. These qualities are lost when the rules of finality are changed in each proceeding. Confidence and respect for the courts erodes when the rules are changed with each new set of litigants before the court or with each new announcement by a court as to why res judicata is not "appropriate" in a given case. (BRICKLEY, J., concurring, *ante,* pp 606-607.) It is as uncertain that perfect justice may be gained in any particular case by deviating from the established rules of finality as it is that any majority of this or any court is able to define perfect justice. Here, for example, the majority forecloses the presumed dependents under § 353(1)(a)(i) from ever litigating the constitutionality of the provision and, indeed, even from contesting the lead opinion's unique rule of res judicata.

Historically, the application of res judicata has been determined by reference to an overriding

institutional policy of fairness and finality. If that policy is to be abandoned, some justification must be identified apart from the current judicial view of the substance of law upon which the defense is based. Otherwise, there is no law of res judicata. The majority completely fails to identify any such policy in the instant case.

Giving due deference to the principle of separation of powers, we must presume that each legislative enactment is based upon an important social policy. It is undisputed and must not be forgotten that Ronald Pike has been adjudicated totally and permanently disabled. For these severe cases, the Legislature has presented a conclusive presumption of total and permanent disability for eight hundred weeks. See MCL 418.351(2); MSA 17.237(351)(2). Within that time frame, not even a change of physical condition presents a basis for reopening a final order. It cannot be seriously contended that the Legislature nevertheless envisioned a reopening of the issue of Mrs. Pike's dependency at five dollars per week.[18]

---

[18] The majority, perhaps inadvertently, has created today a serious barrier to plaintiffs in these proceedings. Generally, plaintiffs' counsel in workers' compensation proceedings are retained on a contingency fee basis in the amount of thirty percent of the accrued amount of a final bureau order. See 1980 AACS, R 408.44. However, there is no accrued amount in the case in which defendants, such as these defendants, petition the bureau to reduce or stop compensation. As one commentator has explained:

An attorney is sometimes required to expend a lot of time and effort, and perhaps invest in substantial costs, for a case that does not lead to any recovery of accrued benefits. A *petition to stop* is a typical example of such a case. As discussed in § 20.10 *supra,* when there is an order to pay continuing compensation benefits, an employer can challenge the continuing disability of the plaintiff by filing a petition to stop. This is often litigated in the same way as the worker's original petition for hearing. The plaintiff's attorney must meet with his or her client many times, take several medical depositions, and perhaps even schedule one or more physical examinations. Throughout this time, however, the defendant continues to pay

It is ironic that the object of this alteration of the rule of finality in workers' compensation proceedings is a worker whom the Legislature sought most to protect from the hazards of relitigation. Indeed, it is doubly ironic, since the issue which the defendants seek to raise also was given legislative protection from protracted litigation by way of a conclusive presumption. The majority has overridden this policy and consigned the rule of res judicata to ad hoc determination of "fairness" by this Court. On policy grounds, today's decision is simply indefensible.

There may be matters of public policy so extraordinary as to justify a departure from res judicata principles. However, a court's vague notion of "fairness"[19]—though motivated by benevo-

benefits. When the case is over, therefore, there are no accrued benefits from which attorney fees can be paid, even if the plaintiff prevails. In *Gross v Great Atlantic & Pacific Tea Co,* 87 Mich App 448; 274 NW2d 817 (1978), the plaintiff sought payment for his attorney fees from the defendant employer. The court of appeals indicated that "the equities in this case are with [the] plaintiff," yet ruled that it had no authority to require a defendant employer to pay the plaintiff's attorney fee in such a case. *Id.* at 451; 274 NW2d at 819. Theoretically, the plaintiff's attorney is entitled to recover 30 percent of the amount the worker received from the time the defendant attempted to terminate benefits until the case was concluded. The practical problem, however, is that most workers find it difficult to support themselves and their families even on the entire amount of benefits they receive. It would be extremely difficult for them to set aside 30 percent to pay their attorneys at some future date. In most such cases, the same attorney represented the worker in the original claim and received a substantial fee. Most plaintiffs' attorneys simply feel that it "comes with the territory" to represent the same client in the subsequent litigation without the assurance of any reimbursement. [Welch, Worker's Compensation in Michigan: Law & Practice, § 24.01, pp 347-348. Emphasis in the original.]

[19] The lead opinion concludes "that plaintiff in this case should not be required to repay dependency benefits received prior to the date of this opinion . . . ." Opinion of GRIFFIN, J., *ante,* p 604. However, the lead opinion does not foreclose the possibility that this Court, in future cases, will attempt to force previously paid benefits from

lence in a particular case—does not justify the substantial injustice that results when finally decided cases are reopened. Such a view negates the expectations of the bar on which client advice is predicated and corrupts the decision-making process of a court.

The doctrine of res judicata bars the relitigation of the dependency issue. The defendants' petition for a benefit reduction was properly dismissed. The decision of the workers' compensation appeal board should be affirmed.

CAVANAGH, J., concurred with BOYLE, J.

ARCHER, J. I concur in Justice BOYLE's opinion through part I-A.

injured workers. This apparently distinguishes Justice BRICKLEY's opinion which retains a blush of res judicata for benefits previously received. Furthermore, while the lead opinion suggests that either a change in law or the possibility that the subsequent petition would change only the *amount* of benefits, is the basis for its holding, Justice BRICKLEY's "disagreement does not involve the question whether an exception to res judicata should apply, but rather whether the application of the res judicata concept in cases arising out of income-maintenance systems such as workers' compensation permits redetermination in light of an intervening change in the case law." Concurring opinion of BRICKLEY, J., *ante,* pp 608. While it is clear that the traditional rule of res judicata in workers' compensation proceedings has been abandoned, absent a majority for the rationale for today's result, it remains unclear whether the plurality's rule will control in future litigation.